**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

HENRY JOSEPH JAQUEZ,

        **Plaintiff,**

v.

CHEROKEE COUNTY, JOHN BENNETT,
HALEY ROBISON, RACHEL MARIE
DALLIS, JOHNNY DALLIS, CHRIS
SHRUM, THOMAS SCROGGINS, DAYNA
COHEN, SAWYER WYSE, RICHARD
SOURJOHN, JEREMY HUFF, MEGAN
FORD, TAMERA SUMMERS, SYLVIA
HOLMES and ROBERT JONES,

        **Defendants.**

Case No. 23-CV-410-JFH-DES

## OPINION AND ORDER

This civil rights action, brought pursuant to 42 U.S.C. § 1983, is before the Court on Defendants John Bennett and Haley Robinson's (collectively, "District Attorney Defendants") Motion to Dismiss [Dkt. No. 38], Defendant Cherokee County's Motion to Dismiss [Dkt. No. 41], Defendants Johnny Dallis, Chris Shrum, Thomas Scroggins, Dayna Cohen, Sawyer Wyse, Richard Sourjohn, Jeremy Huff, Megan Ford, Tamera Summers, Sylvia Holmes and Robert Jones' (collectively, "Cherokee County Jail Defendants") Motion to Dismiss [Dkt. No. 42] and Defendant Rachel Dallis' Motion to Dismiss [Dkt. No. 49]. In addition to the Motions to Dismiss [Dkt. Nos. 38, 41, 42 and 49], the Court has before it Plaintiff Henry Joseph Jaquez's ("Plaintiff") Complaint [Dkt. No. 1], Plaintiff's Response to the District Attorney Defendants' Motion to Dismiss [Dkt. No. 46], Plaintiff's Response to the Cherokee County Jail Defendants' Motion to Dismiss [Dkt. No. 47], the Cherokee County Jail Defendants' Reply [Dkt. No. 50] and Plaintiff's Response to

Defendant Rachel Dallis' Motion to Dismiss [Dkt. No. 51].

## BACKGROUND

At the time of filing his Complaint, Plaintiff was a pretrial detainee at Cherokee County Detention Center. Dkt. No. 1 at 3.[1] Plaintiff initiates this suit against numerous defendants alleging nine (9) separate constitutional violations.

Some of Plaintiff's claims challenge the conditions of his confinement while detained at Cherokee County Jail. Plaintiff alleges he was deprived outdoor recreation (Claim 1), prohibited from seeing a chaplain and threatened for reading his Bible out loud infringing on his right to exercise his religion (Claim 3) and he was prohibited from speaking violating the First Amendment (Claim 4). Plaintiff also alleges he has initiated many complaints, grievances and lawsuits which have resulted in retaliation (Claim 8) and that one time when he asked for a copy of his Prison Rape Elimination Act ("PREA") complaint he was sprayed with O.C. chemical agents (Claim 2). For his final claim, he alleges he was deprived procedural due process while detained (Claim 9).

Plaintiff's other claims stem from one overarching situation. Plaintiff alleges he sent a letter to the District Attorney's office offering to provide information regarding two inmates ongoing cases in exchange for a lesser sentence in his case. Plaintiff alleges the District Attorney Defendants provided the letter to defense attorney Rachel Dallis, Rachel Dallis informed the inmates of Plaintiff's letter, the inmates expressed an intention to "get" Plaintiff, the Cherokee County Jail Defendants were aware of the situation and helped orchestrate an opportunity for the inmates to assault Plaintiff and Plaintiff was in fact assaulted. This situation gives rise to Plaintiff's claims for cruel and unusual punishment/failure to protect with retaliation (Claim 5), excessive

---

[1] The Court's citations refer to the CM/ECF header pagination.

force (Claim 6) and deliberate indifference with reckless disregard for health and safety (Claim 7).

Plaintiff names the following defendants: Cherokee County, John Bennett, Haley Robison, Rachel Dallis, Jonny Dallis, Chris Shrum, Thomas Scroggins, Dayna Cohen, Sawyer Wyse, Richard Sourjohn, Jeremy Huff, Megan Ford, Tamera Summers, Sylvia Holmes and Robert Jones. Dkt. No. 1 at 2-9. Each Defendant responded to Plaintiff's Complaint with a motion to dismiss. The Court analyzes Plaintiff's claims and each motion in detail below.

## DISCUSSION

### I.    Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint should be dismissed for failure to state a claim upon which relief can be granted "only when it appears that the plaintiff can prove no set of facts in support that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997)). When determining whether to grant a motion to dismiss, the district court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint. *Jojola v. Chaves*, 55 F.3d 488, 494 (10th Cir. 1995). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* (internal quotations and citations omitted).

A request for dismissal pursuant to Rule 12(b)(6) requires the Court to determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

3

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is required to exercise a liberal interpretation of Plaintiff's pleadings, *Haines v. Kerner*, 404 U.S. 520-21 (1972), the Court need not assume the role of advocate for Plaintiff, and he must present more than conclusory allegations to survive a motion to dismiss for failure to state a claim, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Id.* (citing cases). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id.*

## II.    The District Attorney Defendants' Motion to Dismiss [Dkt. No. 38]

The Court first addresses the District Attorney Defendants' Motion to Dismiss. Throughout his Complaint, Plaintiff alleges he "sent voluntary statements about this serious matter to, 'John Bennett,' and, 'Haley Robison[.]'" Dkt. No. 1 at 11 (internal punctuation and quotations in original), *see also id.* at 14, 17, 21, 26-27 and 35. Plaintiff appears to assert for all the alleged wrongs he suffered while a pre-trial detainee, he made the District Attorney Defendants aware of these instances "to no avail." *Id.* at 11, *see also id.* at 14, 17 (District Attorney Defendants "always ignore my pleadings, complaints, and appeals, with disregard."), 21 ("These pleadings, and, appeals, and, statements, are also to no avail, and, no relief."), and 27 ("to absolutely no avail"). Plaintiff also alleges he sent a letter to the District Attorney Defendants containing information he gathered from fellow detainees regarding their cases, the District Attorney Defendants gave the letter to a defense attorney, Rachel Dallis, and Rachel Dallis informed the implicated detainees of Plaintiff's letter leading to Plaintiff being assaulted. *See id.* at 22-26, 31-34. Plaintiff also alleges

the District Attorney Defendants caused and provoked the assault he suffered. *See id.* at 28. Finally, Plaintiff alleges the District Attorney Defendants retaliated against him by having him "hit, by inmate, 'Decker,'" because he filed a PREA complaint and lawsuit. *See id.* at 36, 38. In all, Plaintiff appears to bring the following claims against the District Attorney Defendants: conditions of confinement (Claim 1), excessive force (Claim 2), free exercise of religion (Claim 3), violation of freedom of speech (Claim 4), failure to protect with retaliation (Claim 5), excessive force (Claim 6), deliberate indifference (Claim 7), and retaliation with deliberate indifference (Claim 8). Plaintiff asserts he is suing the District Attorney Defendants in their individual and official capacities. *See e.g. id.* at 12 ("I am suing 'all above named' in their 'official and individual capacities.'").

As mentioned, the District Attorney Defendants responded to Plaintiff's Complaint by filing a Motion to Dismiss. *See* Dkt. No. 38. The District Attorney Defendants assert Plaintiff's claims against them must be dismissed because, in their official capacity, they are immune from suit under the Eleventh Amendment, they enjoy absolute prosecutorial immunity, they are entitled to qualified immunity concerning the claims lodged against them in their individual capacities, they did not personally participate in any of the alleged wrongdoing outlined in the Complaint, and they have no authority over the jail's grievance process. *See id.* For these reasons, the District Attorney Defendants contend dismissal is appropriate.

Plaintiff filed a Response with numerous attachments. *See* Dkt. No. 46. Plaintiff agreed the District Attorney Defendants are entitled to immunity in their official capacities. *Id.* at 3. Therefore, Plaintiff's claims against the District Attorney Defendants in their official capacity are dismissed. Plaintiff maintains he pled sufficient "individual action" in his Complaint to state a claim for relief against the District Attorney Defendants in their individual capacity. *Id.* at 3-4.

Therefore, the Court will address Plaintiff's claims against the District Attorney Defendants in their individual capacities.

First and foremost, "[i]n order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established." *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). Plaintiff must "identify specific actions taken by particular defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 2011)). Additionally, a plaintiff must "make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations[.]" *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original).

Plaintiff's Complaint is completely devoid of any specific actions taken by either of the District Attorney Defendants. *See* Dkt. No. 1. In fact, throughout his Complaint, Plaintiff makes collective allegations against both Defendant Bennett and Defendant Robison. *See, e.g.,* Dkt. No. 1 at 11, 14, 17. There are no allegations that Plaintiff even met the District Attorney Defendants or spoke with them in any manner. Nor does he allege the District Attorney Defendants had any involvement with the day-to-day operations of the jail or Plaintiff's confinement. It follows, Plaintiff failed to state a claim against the District Attorney Defendants concerning his claims for conditions of confinement (Claim 1), excessive force (Claim 2), free exercise of religion (Claim 3) and violation of freedom of speech (Claim 4).

Concerning his claims that arise out of the allegedly leaked letter, Plaintiff merely speculates the District Attorney Defendants received his letter, but he provides no factual support for this speculation. *See* Dkt. No. 1 at 22 ("I sent a letter to Cherokee County District Attorneys Office[.]"). His contention that the letter was then passed on to Defendant Rachel Dallis also lacks

6

any factual support. *See id.* at 23.[2] A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level[.]." *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted); *see also Foreman v. Elam*, Case No. CIV 18-071-RAW-SPS, 2019 WL 1413755, at *5 (E.D. Okla. Mar. 28, 2019) (unpublished)[3] ("speculation is insufficient to state a claim."). Furthermore, his allegations that the District Attorney Defendants caused and provoked the assault are impermissibly conclusory. *Hall,* 935 F.2d at 1110 ("conclusory allegations without supporting factual averments are insufficient to state a claim[.]"). Finally, his allegations of retaliation by the District Attorney Defendants are vague and conclusory. *Id.* None of the allegations stemming from the letter identify any specific actions taken by either District Attorney Defendant which would support a claim for relief. Accordingly, Plaintiff failed to state a claim against the District Attorney Defendants concerning his claims failure to protect with retaliation (Claim 5), excessive force (Claim 6), deliberate indifference (Claim 7), and retaliation with deliberate indifference (Claim 8).

The District Attorney Defendants assert they are entitled to qualified immunity. *See* Dkt. No. 38 at 9-12. "If a plaintiff fails to state a valid claim, we need not even reach the issue of the qualified immunity defense." *Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir. 1995). Since the Court concludes Plaintiff failed to state a valid claim showing a deprivation of his constitutional rights by the District Attorney Defendants, the Court will not address the issue of qualified immunity.

---

[2] Plaintiff acknowledges he filed other lawsuits against Defendant Rachel Dallis. Dkt. No. 1 at 23. Accordingly, it is plausible the inmates communicated they were going to "get [Plaintiff] for Rachel Dallis" in response to the publicly filed lawsuits.

[3] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

Based upon the foregoing analysis, Defendants John Bennett and Haley Robison's Motion to Dismiss [Dkt. No. 38] is granted.

III.     **Defendant Rachel Dallis' Motion to Dismiss [Dkt. No. 49]**

As to Defendant Rachel Dallis, Plaintiff alleges the letter he wrote to the District Attorney Defendants was given to her and she revealed the contents or existence of the letter to inmates Santana and Decker who were housed in the same pod as Plaintiff. *See* Dkt. No. 1 at 22-34. As a result of the letter and Plaintiff's other complaints, jail staff allegedly permitted inmate Decker to assault Plaintiff. *See id.* Plaintiff alleges Defendant Dallis "personally participated in the leading of, 'excessive force,' by the 'inmate.'" *Id.* Plaintiff further alleged Defendant Dallis "released confidential information, and gave the 'inmate' information to have the inmate, 'hit me,' with, 'excessive force.'" *Id.* at 29. Plaintiff also alleges Defendant Dallis retaliated against him for filing complaints and PREA. *Id.* at 36, 38. While not entirely clear, Plaintiff appears to assert the following claims against Defendant Dallis: failure to protect with retaliation (Claim 5), excessive force (Claim 6), deliberate indifference (Claim 7), and retaliation with deliberate indifference (Claim 8).

Defendant Dallis filed a Motion to Dismiss contending she is not a state actor and, therefore, cannot be liable to Plaintiff for allegedly violating his constitutional rights. *See* Dkt. No. 49 at 5-6. This Court agrees.

Plaintiff acknowledges, and court records reveal, Defendant Dallis at one point was Plaintiff's appointed attorney. *See* Dkt. No. 51 at 3; *see also Jaquez v. Cherokee County Sheriff's Dep't*, No. 23-CV-096-RAW-GLJ, 2024 WL 4452054, at *1 (E.D. Okla. Oct. 9, 2024). While the instant claims against Defendant Dallis do not arise out of her role as *Plaintiff's* counsel, it appears Defendant Dallis was operating in her role as an appointed attorney when she met with other

inmates and allegedly shared the information regarding Plaintiff's letter. *See* Dkt. No. 1 at 23-24.

The Supreme Court has explained, "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981). It follows, Defendant Dallis cannot be liable in this § 1983 action for performing a lawyer's traditional functions, such as meeting with her clients. Furthermore, Plaintiff has failed to allege Defendant Dallis "is a state official, … has acted together with or has obtained significant aid from state officials, or … [her] conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (describing the ways in which a person "may fairly be said to be a state actor."); *see also Nagy v. Spence*, 172 Fed. App'x 847, 848 (10th Cir. 2006) (affirming district court's dismissal of § 1983 action against private attorney).[4] For these reasons, Defendant Dallis' Motion to Dismiss [Dkt. No. 49] is granted.

## V.     Cherokee County's Motion to Dismiss [Dkt. No. 41]

Plaintiff also names "Cherokee County" as a defendant. Dkt. No. 1 at 1. Cherokee County contends dismissal is appropriate because the county has been improperly named. *See* Dkt. No. 41. The right to sue a county in the State of Oklahoma is purely statutory, and the mode prescribed by statute for prosecuting actions against a county must be strictly followed. *Smith v. State*, 166 P. 463, 464 (1917). The statutory procedure for naming a county as a defendant is found at Okla. Stat. tit. 19, § 4, which specifically provides that, "In all suits . . . against a county, the name in which a county shall . . . be sued shall be, 'Board of County Commissioners of the County of

---

[4] In his Response, Plaintiff alleges in conclusory fashion that Defendant Dallis "was and is acting under the color of state law[.]" Dkt. No. 51 at 2, *see also id.* at 52. The Court declines to consider allegations outside the four corners of the Complaint. *Jojola v. Chaves,* 55 F.3d 488, 494 (10th Cir. 1995) (district court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint).

_____. . . '"  The Supreme Court of Oklahoma has stated that "[t]his statute is mandatory and requires that all suits prosecuted by or against a county be prosecuted in the name of the board of county commissioners of the county in interest." *Green Constr. Co. v. Okla. Cnty.*, 50 P.2d 625, 627 (Okla. 1935).  Therefore, the Board of County Commissioners of the County of Cherokee would be the properly named party.  Because Plaintiff named an improper party, no valid summons could be issued to or served on the county. *Id.*  Furthermore, any summons issued and served did not confer jurisdiction over the county. *Id.*  It follows Cherokee County is entitled to dismissal from this action. *See Cash v. Murphy,* No. 14-CV-245-JHP-SPS, 2016 WL 6078334, at *5 (E.D. Okla. Oct. 17, 2016) (unpublished) (dismissing improperly named county from suit).  Cherokee County's Motion to Dismiss [Dkt. No. 41] is granted.

IV.     **The Cherokee County Jail Defendants' Motion to Dismiss [Dkt. No. 42]**

The remaining individual defendants, Jonny Dallis, Chris Shrum, Thomas Scroggins, Dayna Cohen, Sawyer Wyse, Richard Sourjohn, Jeremy Huff, Megan Ford, Tamera Summers, Sylvia Holmes and Robert Jones, are all associated with the Cherokee County Jail and it appears Plaintiff asserts each claim against some or all of these defendants.  The Cherokee County Jail Defendants failed to engage in any meaningful analysis regarding each of Plaintiff's nine (9) claims. *See* Dkt. No. 42 at 5-9.  Nevertheless, pursuant to its obligation to screen Plaintiff's Complaint, the Court will analyze each claim. *See* 28 U.S.C. §§ 1915A(a) and 1915(e)(2).

A.  **Claim 1:  Conditions of Confinement/ Deprivation of Outdoor Recreation**

Plaintiff alleges his Fourteenth Amendment rights have been violated because he has not received "any outdoor recreation, fresh air, sunlight, and exercise" since January 4, 2023.  Dkt. No. 1 at 10.  Fatally, Plaintiff merely alleges that "Cherokee County" and "officials" imposed this deprivation upon him. *Id.*  He further alleges he spoke to Defendants Sylvia Holmes, Dayna

Cohen, Thomas Scroggins, and Megan Ford "to no avail." *Id.* at 11. He "grieved" this serious issue to Johnny Dallis, Chris Shrum and Tamera Summers. *Id.*

While the conditions of a pretrial detainee's confinement are constitutionally protected under the Due Process Clause of the Fourteenth Amendment, *Colbruno v. Kessler,* 928 F.3d 1155, 1162 (10th Cir. 2019), as noted above, Plaintiff must "identify specific actions taken by particular defendants." *Pahls*, 718 F.3d at 1226. Here, Plaintiff's allegations do not make clear "exactly who is alleged to have done what." *Robbins*, 519 F.3d at 1250. Plaintiff's Complaint is devoid of any factual allegations establishing which Defendant deprived him of outdoor recreation, fresh air, sunlight and exercise. Accordingly, this claim must be dismissed.

### B. Claim 2: Excessive Force

Next, Plaintiff alleges on April 28, 2023, Defendants Thomas Scroggins, Robert Jones and Jeremy Huff did not want to make him a copy of his PREA Complaint. Dkt. No. 1 at 10. In response to his request for a copy of his PREA complaint, Plaintiff alleges Thomas Scroggins and Jeremy Huff shoved him and Thomas Scroggins deployed "O.C. chemical agents upon [his] face." *Id.* at 13. Robert Jones was allegedly present for the incident. *Id.* As a result of the O.C. chemical agent and not being given any "decontaminate," Plaintiff suffered "burns to [his] face" and a permanent scar on his face. *Id.* Plaintiff alleges he grieved this matter to Sylvia Holmes, Sawyer Wyse, Richard Sourjohn, Megan Ford and Dayna Cohen. *Id.* He "pleaded and spoke with Officer Robert Jones since he was 'directly involved.'" *Id.* Plaintiff also "grieved" the issue to Johnny Dallis and Chris Shrum. *Id.* at 14. The Cherokee County Jail Defendants did not specifically address this claim in their motion to dismiss. *See* Dkt. 42.

The Court finds Plaintiff has failed to state a claim against Sylvia Holmes, Sawyer Wyse, Richard Sourjohn, Megan Ford, Dayna Cohen, Johnny Dallis and Chris Shrum. Plaintiff has not

alleged these individuals personally participated in the April 28, 2023 incident.

Further, Plaintiff has failed to state a claim against Robert Jones. Plaintiff alleges Defendant Jones, a detention officer, was "present." Dkt. No. 1 at 13. Beyond his conclusory allegation of direct involvement, Plaintiff has failed to provide any factual support for his assertion that Defendant Jones personally participated in the April 28, 2023, incident. Accordingly, the excessive force claim against Defendant Jones must be dismissed. *Novitsky v. City of Aurora,* 491 F.3d 1244, 1254 (10th Cir. 2007) (excessive force claim against officer who was present at the scene but did not assist or direct another officer to remove the plaintiff failed); *see also Clark v. Colbert,* No. 16-CV-115-JHP, 2017 WL 3049523, at *6-7 (E.D. Okla. July 18, 2017) (unpublished) (holding plaintiff failed to establish any basis for holding Defendant Colbert liable wherein Defendant Colbert was present at the scene of an arrest but "had no involvement in directing any officer to use the pepper ball launcher."), *affirmed* 895 F.3d 1258 (10th Cir. 2018).

This leaves the excessive force claim against Defendants Thomas Scroggins and Jeremy Huff. Plaintiff alleges Scroggins and Huff shoved Plaintiff into his cell and Scroggins deployed O.C. chemical agents in response to Plaintiff's request for a copy of his PREA complaint. Dkt. No. 1 at 10, 13.

The Fourteenth Amendment's Due Process Clause governs claims of excessive force brought by a pretrial detainee. *Rowell v. Bd. of Cnty. Comm'rs of Muskogee Cnty.,* 978 F.3d 1165, 1171 (10th Cir. 2020). To succeed on an excessive force claim under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson,* 576 U.S. 389, 396-97 (2015). Whether a defendant's actions were objectively unreasonable "turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor,* 490 U.S. 386, 396 (1989)). Plaintiff must allege

facts tending to show the officers acted maliciously with the intent to harm him.  *See Whitley v. Albers,* 475 U.S. 312, 320-21 (1986).  "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  *Id.* at 397 (internal citations omitted).  "A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'"  *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)).

Accepting Plaintiff's allegations as true, his request for a copy of his PREA complaint was met with being physically shoved into this cell and sprayed with O.C. chemical agents.  Dkt. No. 1 at 10, 13.  Based on these alleged facts, Scroggins and Huff acted in an objectively unreasonable manner with malicious intent to harm Plaintiff.  Furthermore, the Cherokee County Jail Defendants did not raise, let alone adequately brief, the issue of qualified immunity.  *Cf. Berryman v. Niceta,* 143 F. 4th 1134, 1140-41 (10th Cir. 2025) (noting "to adequately present the defense [of qualified immunity], the defendant must not only explicitly raise it … but must also plead the defense beyond a 'perfunctory assertion[.]'" (internal citations omitted)).  Therefore, the excessive force claim is dismissed as to Defendants Sylvia Holmes, Sawyer Wyse, Richard Sourjohn, Megan Ford, Dayna Cohen, Johnny Dallis, Chris Shrum and Robert Jones.  Plaintiff has stated a claim for excessive force against Defendants Scroggins and Huff.

### C.  Claim 3:  Free Exercise Claim

In his third claim, Plaintiff alleges he is not allowed to see or talk with a jail chaplain and has been threatened for reading his Bible out loud.  Dkt. No. 1 at 16.  Plaintiff alleges this conduct amounts to not being allowed to practice his religion.  *Id.*  He alleges "this has totally affected me

13

spiritually. My religious beliefs as a Christian rely on being able to have church service in jail and find comfort in seeing a jail chaplain for spiritual concerns." *Id.* at 18. "To state a claim for violation of the First Amendment's Free Exercise Clause, a plaintiff must plead facts that plausibly show or allow the inference that the prison regulation or action at issue 'substantially burdened sincerely-held religious beliefs.'" *Khan v. Barela,* 808 F. App'x 602, 614 (10th Cir. 2020) (quoting *Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir. 2007)). Plaintiff must also "include sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests." *Ghailani v. Sessions,* 859 F.3d 1295, 1304 (10th Cir. 2017) (quoting *Gee v. Pacheco,* 627 F.3d 1178, 1188 (10th Cir. 2010)).

Here, Plaintiff failed to allege his religious practice was substantially burdened by the inability to see a chaplain and the prohibition on reading his Bible out loud. Plaintiff alleges in conclusory fashion these restrictions have "totally affected me spiritually" and he gains "comfort" in seeing a jail chaplain. Dkt. No. 1 at 18. The Court finds these allegations insufficient. In *Burnett v. Jones,* the plaintiff alleged he was on lockdown during Hanukkah and Christmas and was denied the opportunity to gather with other members of his faith to celebrate those religious holidays. 437 F. App'x 736, 745 (10th Cir. 2011). Burnett was permitted to practice his religion by worshiping in his cell. *Id.* at 746. The Tenth Circuit held Burnett failed to state a claim upon which relief may be granted because his complaint was "[d]evoid of allegations that his religious practice [was] substantially burdened." *Id.* The Tenth Circuit noted, "Mr. Burnett's allegations establish, at most, a bare desire to hold group gatherings to mark religious holidays." *Id.* Here, Plaintiff did not allege his religious practice was substantially burdened. His allegations reveal he had access to a Bible and was permitted to worship in his cell. Dkt. No. 1 at 16. At most, he has alleged a desire to meet with a chaplain and read his Bible out loud.

14

Additionally, "[m]ere verbal threats or harassment do not raise to the level of constitutional violation unless they create 'terror of instant and unexpected death.'" *Alvarez v. Gonzales,* 155 F. App'x 393, 396 (10th Cir. 2005) (quoting *Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir. 1992)). Plaintiff's allegations that he was threatened to be sprayed with chemical agents and placed in a restraint chair for reading his Bible out loud [Dkt. No. 1 at 16] do not create a "terror of instant and unexpected death," *Northington,* 973 F.2d at 1524, and, therefore, these allegations are insufficient to state a free exercise claim.

Furthermore, Plaintiff has failed to include facts showing the "policy" restricting his ability to meet with a chaplain or read his Bible out lout was not related to a legitimate penological interest. Plaintiff's Complaint acknowledges he was in protective custody [Dkt. No. 1 at 17] and later moved following the assault [*id.* at 27]. For this additional reason, Plaintiff has failed to state a free exercise claim. *See Ghailani,* 859 F.3d at 1304 (affirming district court's dismissal of free exercise claim where plaintiff "did not include facts showing the regulations restricting his ability to pray Jumu'ah were not related to a legitimate penological interest.").

Finally, Plaintiff's claim appears to be lodged against Defendants Johnny Dallis, Chris Shrum, Sylvia Holmes, Sawyer Wyse, Dayna Cohen, Megan Ford, Thomas Scroggins, Tamera Summers and Richard Sourjohn. *See* Dkt. No. 1 at 15-18. Plaintiff wholly failed to allege any specific actions taken by each defendant. *Pahls*, 718 F.3d at 1226. For all these reasons, Plaintiff's free exercise claim must be dismissed.

### D. Claim 4: Freedom of Speech

For his Fourth Claim, Plaintiff alleges he was prohibited from speaking from 4/24/2023 to 5/10/2023 and from 8/24/2023 to 10/21/2023. Dkt. No. 1 at 15. Plaintiff claims this policy was put in place by "Cherokee County and Cherokee County Jail Administrations [sic.] Johnny Dallis

and Chris Shrum and Tamera Summers." *Id.* at 19.  Plaintiff alleges he was threatened with force

if he spoke in his cell.  *Id.*  Plaintiff also alleges he *spoke* with numerous Defendants regarding this

issue.  *Id.* at 20.  Plaintiff claims not being allowed to speak for several months violated his First

Amendment right to free speech.  *Id.* at 15, 19.

> In the First Amendment context, the Supreme Court has acknowledged that "federal courts must take cognizance of the valid constitutional claims of prison inmates. Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987) (citation omitted).  It also has recognized, however, that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Id.* (internal quotation marks omitted).  Accordingly, prisoners' rights may be restricted in ways that "would raise grave First Amendment concerns outside the prison context." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989).  In particular, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

*Gee,* 627 F.3d at 1187.  The Tenth Circuit has held a plaintiff alleging a violation of his First

Amendment right to free speech in prison must "include sufficient facts to indicate the plausibility

that the actions of which he complains were *not* reasonably related to legitimate penological

interests." *Id.* at 1188 (emphasis in original).  Plaintiff is not required to "identify every potential

legitimate interest and plead against it." *Id.*  "It is sufficient that he plead facts from which a

plausible inference can be drawn that the action was not reasonably related to a legitimate

penological interest." *Id.*

Plaintiff has not alleged sufficient facts to allow this Court to draw the plausible inference

that its alleged ban on speech was not reasonably related to a legitimate penological interest.

Plaintiff alleged he was in protective custody and alter moved to a different cell after being

assaulted.  Dkt. No. 1 at 17, 27.  He alleges elsewhere in his Complaint he was assaulted by other

inmates.  *See id.* at 23-26.  Therefore, as alleged, the Court cannot draw an inference that the

Defendants' actions were not reasonably related to a legitimate penological interest.  The Court

16

dismisses Plaintiff's First Amendment freedom of speech claim.

### E.  Claim 5:  Right to be Free from Cruel and Unusual Punishments; Failure to Protect with Retaliation

As a result of Plaintiff's leaked letter, addressed above, Plaintiff alleges the Cherokee County Jail Defendants provoked and instigated other inmates to "get" him, let him out of his cell to get water to facilitate the assault and turned their backs as he was assaulted.  Dkt. No. 1 at 24-26.  As a result, he was placed in a booking cell where he lost his writing supplies, law library, access to see a chaplain, was not permitted to speak and lost outdoor recreation opportunities.  *Id.* at 27.  Based on these allegations, Plaintiff claims he suffered cruel and unusual punishment, and the Cherokee County Jail Defendants failed to protect him "with retaliation" in violation of the First and Eighth Amendments.[5]  *Id.* at 22.

### i.   Loss of Privileges While in Booking Cell

The conditions of a pretrial detainee's confinement are constitutionally protected under the Due Process Clause of the Fourteenth Amendment.  *See Colbruno,* 928 F.3d at 1162.  Pretrial detainees "cannot be punished at all," let alone in a cruel and unusual manner.  *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015).  The government "may subject [a pretrial detainee] to the restrictions and conditions of the detention facility [only] so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution."  *Wolfish*, 441 U.S. at 536–37.  To determine if a pretrial detainee has been subjected to punishment, "we must ask whether an expressed intent to punish on the part of the detention facility officials exists.  If so,

---

[5]  To the extent Plaintiff specifically invokes the Eighth Amendment, his claim fails.  Plaintiff was a pretrial detainee at the time of the incidents giving rise to his claims.  Dkt. No. 1 at 3.  The Eighth Amendment's protections are not applicable to pretrial detainees.  *See Colbruno,* 928 F.3d at 1162.  The Court will address Plaintiff's cruel and unusual punishment claim under the Fourteenth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979); *Garcia v. Salt Lake Cnty*., 768 F.2d 303, 307 (10th Cir. 1985); *Barrie v. Grand Cnty., Utah*, 119 F.3d 862, 867 (10th Cir. 1997).

liability may attach.  If not, a plaintiff may still prove unconstitutional punishment by showing that the restriction in question bears no reasonable relationship to any legitimate governmental objective."  *Blackmon v. Sutton,* 734 F.3d 1237, 1241 (10th Cir. 2013) (citation and internal quotation marks omitted).

To the extent Plaintiff is alleging the loss of his writing supplies, law library access, access to a chaplain, outdoor recreation time and ability to speak amount to a violation of his Fourteenth Amendment rights, this claim fails.  *See* Dkt. No. 1 at 27.  The Complaint is devoid of any allegations which establish these restrictions were put in place to punish.  Instead, the Complaint reveals the restrictions were put in place as part of Plaintiff being moved to booking cell A7 after he was assaulted.  *See* Dkt. No. 1 at 27.  It follows that the restrictions were part of the jail's efforts to protect Plaintiff and bear a reasonable relationship to a legitimate governmental objective.  Additionally, Plaintiff fails to allege specific involvement and conduct by each named Defendant further undermining his conditions of his confinement claim.  This claim is dismissed.

### ii.  Failure to Protect

Concerning Plaintiff's failure to protect claim, as noted, the Eighth Amendment does not apply directly to pretrial detainees.  However, if a plaintiff can establish a violation of the Eighth Amendment, he can establish his Fourteenth Amendment rights as a pretrial detainee have been violated.  *City of Revere v. Massachusetts Gen. Hospital*, 463 U.S. 239, 244 (1983) ("the due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner").  The Eighth Amendment imposes a duty on jail officials to "provide humane conditions of confinement," including "taking reasonable measures to guarantee the safety of inmates."  *Hooks v. Atoki*, 983 F.3d 1193, 1205 (10th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).  This obligation includes a duty "to protect prisoners from

violence at the hands of other prisoners." *Id.* (quoting *Farmer*, 511 U.S. at 833). The Supreme Court has held that being violently assaulted in prison is not "part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 832-34 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. To establish a cognizable Eighth Amendment claim for failure to protect, Plaintiff "'must show that he is incarcerated under conditions posing a substantial risk of serious harm' the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001). The subjective component of the deliberate indifference test requires that, before liability can be imposed, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).

The Court notes that this claim is a close call as it relates to Defendants Scroggins and Huff. Plaintiff alleges these Defendants provoked and instigated the inmates on H-Pod and told them to "go ahead and get [Plaintiff] if they get a chance" and "they didn't care." Dkt. No. 1 at 25. Further, Plaintiff allegedly overhead these Defendants scheming with inmates to have Plaintiff assaulted when he was released from his cell to get water. *Id.* Next, Plaintiff alleges these officers were on duty on August 19, 2023, when they "let [Plaintiff] out of [his] cell H-2 to get water for lunch[.]" *Id.* Further, Plaintiff alleges these Defendants watched as inmate Decker approached and assaulted Plaintiff. *Id.* at 26. Typically, collective allegations are insufficient to state a claim. *See Brown v. Montoya*, 662 F. 3d 1152, 1165 (10th Cir. 2011) ("[I]t is particularly important in a § 1983 case brought against a number of government actors sued in their individual capacity that the

complaint make clear exactly who is alleged to have done what to whom as distinguished from collective allegations." (citation, alterations, and quotations omitted)). Nevertheless, these facts, taken in context with the rest of Plaintiff's Complaint, presents sufficient information to give fair notice to Defendants Scroggins and Huff the nature of the claim and the grounds on which it rests. *See Harris v. McCurtain County Jail Trust*, Case No. 22-CV-187-RAW-DES, 2023 WL 11053414, at *4 (E.D. Okla. Sep. 6, 2023) (unpublished). Furthermore, Defendants Scroggins and Huff failed to provide the Court with any substantive response to these allegations. *See* Dkt. No. 42. Accordingly, Plaintiff has stated a failure to protect claim against Defendants Scroggins and Huff.[6]

### iii. Retaliation

Plaintiff's fifth claim includes a passing reference to retaliation. He titles his claim, "failure to protect with retaliation." Dkt. No. 1 at 22-27. However, the claim lacks any factual allegations developing a retaliation claim. *See id.* Therefore, to the extent Plaintiff is asserting a retaliation claim within his fifth claim, Plaintiff has failed to state a claim upon which relief can be granted.

### F. Claim 6: Excessive Force

Plaintiff alleges a second excessive force claim stemming from the August 19, 2023, assault perpetrated upon him by another inmate. Dkt. No. 1 at 28-30. Plaintiff's claim fails against the Cherokee County Jail Defendants because the Complaint is clear that the force he complains of was perpetrated by inmate Decker, not any of the Cherokee County Jail Defendants. *Id.* at 29. Plaintiff explicitly states he is not naming inmates Decker and Santana as defendants. *Id.* at 30. The Court already held Plaintiff stated a failure to protect claim against Defendants Scroggins and Huff premised upon the August 19, 2023, assault. *See supra.* For these reasons, Plaintiff's sixth

---

[6] To the extent Plaintiff intended to state a failure to protect claim against any other Defendants, Plaintiff failed to allege sufficient direct involvement concerning any other Defendants and the claim is dismissed as to all other Defendants.

claim for excessive force is dismissed.

### G. Claim 7: Deliberate Indifference

For his seventh claim, Plaintiff alleges a claim for "deliberate indifference with reckless disregard for health and safety[.]"  Dkt. No. 1 at 31.  This claim stems from the allegedly leaked letter and subsequent assault by inmate Decker.  *See id.* at 31-34.  Pertaining to the Cherokee County Jail Defendants, Plaintiff includes allegations against Defendants Johnny Dallis, Chris Shrum, Sawyer Wyse, Richard Sourjohn, Tamera Summers, Thomas Scroggins, Megan Ford and Jeremy Huff.  *See id.*  Plaintiff's standalone claim for "deliberate indifference" against the Cherokee County Jail Defendants fails because "deliberate indifference" is the standard to evaluate a failure to protect claim.  *See Roppolo v. Farris,* Case No. 21-CV-259-RAW-JAR, 2022 WL 4316129, at *2 (E.D. Okla. Sep. 19, 2022) (unpublished) (noting, "Plaintiff's claim is best characterized as one for failure to protect, which should be analyzed under the Eighth Amendment's deliberate indifference standard.").  "To prevail on a failure-to-protect claim, Plaintiff must show Defendant was deliberately indifferent."  *Id.* (citing *Farmer,* 511 U.S. at 829). The Court has already evaluated Plaintiff's failure to protect claim.  *See supra.*  Therefore, there is no need for the Court to further address it here.  And to the extent Plaintiff is attempting to allege a stand alone claim for deliberate indifference premised on the August 19, 2023, assault, this claim is dismissed.

### H. Claim 8: Retaliation

Next, Plaintiff outlines the numerous complaints, grievances and lawsuits he filed in 2023. Dkt. No. 1 at 35-36.  Plaintiff claims "Johnny Dallis, Chris Shrum, Thomas Scroggins, Dayna Cohen, Tamera Summers, Megan Ford and Sylvia Holmes started retaliating on me for filing complaints and PREA." *Id.* at 36.  He alleges he lost visitation, canteen, religious services, outdoor

recreation, writing supplies and freedom of speech for filing his complaints. *Id.* He also alleges Thomas Scroggins, Jeremy Huff and Robert Jones administered O.C. chemical agents upon him in retaliation for requesting a copy of his PREA complaints. *Id.* Further, he alleges he was assaulted by inmate Decker in retaliation for filing PREA and complaints. *Id.* at 38. Plaintiff alleges he spoke to certain Defendants and grieved these instances of retaliation. *See id.* at 37, 39.

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights.... [A]n inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1263-64 (10th Cir. 2006) (emphasis in original) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir.1998)); *see also Allen v. Avance,* 491 F. App'x 1, *5 (10th Cir. 2012) (unpublished) (applying *Peterson* rule to pretrial detainee's retaliation claim). To prove liability for retaliation, Plaintiff is required to show: (1) he was engaged in a constitutionally protected activity; (2) Defendants caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) the Defendants' action "was substantially motivated as a response to [Plaintiff's] exercise of constitutionally protected conduct." *Shero v. City of Grove,* 510 F.3d 1196, 1203 (10th Cir. 2007). Furthermore, "it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role." *Peterson,* 149 F.3d at 1144. "An inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity." *Id.*

Plaintiff's allegations that he filed "sexual assault, sexual harassment, sexual retaliation complaints and PREA complaints," "complaints, request to staffs, grievances, innate voluntary statements, sheriff's office affidavits and appeals," and a civil rights complaint satisfy the first

*Shero* element. Dkt. No. 1 at 35.

However, to satisfy the third element, Plaintiff is required to show that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson,* 149 F.3d at 1144 (internal quotations and citations omitted). Here, Plaintiff alleges the following injuries: loss of visits, canteen, religious services, outdoor recreation, writing supplies and freedom of speech [Dkt. No. 1 at 36, 38], administration of O.C. chemical agents for asking for copies of his PREA complaints [*id.* at 36], he was not provided medical or mental health treatments [*id.* at 37-38] and was assaulted by another inmate [*id.* at 38]. Plaintiff's claim fails for two reasons.

First, the allegations of retaliation are conclusory in nature. *Hall,* 935 F.2d at 1110 ("conclusory allegations without supporting factual averments are insufficient to state a claim[.]"). He has not presented *specific facts* demonstrating retaliation *because of* the exercise of his constitutional rights or the injuries he allegedly sustained were "substantially motivated" by his engaging in constitutionally protected activity. For example, the restrictions he complains of appear to be a result of being moved to booking cell A7 after the assault and may be linked to the jail's efforts to protect him from further injury. *See, e.g.,* Dkt. No. 1 at 17, 27. Also, the assault was possibly the result of him "snitching" on Inmate Decker. *See id.* at 22-23.

Second, he has failed to sufficiently allege personal involvement by any one defendant to support this claim. *Pahls*, 718 F.3d at 1226. For example, Plaintiff alleges "Johnny Dallis, Chris Shrum, Thomas Scroggins, Dayna Cohen, Tamera Summers, Megan Ford and Sylvia Holmes started retaliating on me. Dkt. No. 1 at 36. However, Plaintiff provides no specific conduct by each of these Defendants to support his claim. *See id.* For these reasons, Plaintiff's retaliation claim must be dismissed.

## I.    Claim 9:  Violation of Due Process

For his final claim, Plaintiff claims he was transferred from county jail to county jail, was "disciplined to no writing supplies, no outdoor recreation, no talking, no chaplain service, no canteen, no visits, no law library" and put on lockdown throughout 2023.  Dkt. No. 1 at 41-45. Plaintiff alleges each transfer, loss of privilege and/or lockdown was done without "due process of law to receive disciplinary hearings and disciplinary procedures." *Id.* at 41 (cleaned up).  He further alleges each instance was "out of disciplinary." *Id., see also id.* at 42 ("I was disciplined to no writing supplies, no outdoor recreation ….") and 43 (Plaintiff was "transferred from Adair County to Sequoyah County … with no reason for disciplinary, no hearing, no written notice[.]" (cleaned up)).

Due process requires that a pretrial detainee not be punished prior to a lawful conviction. *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1106 (10th Cir. 2005) (citing *Bell*, 441 U.S. at 535)  However, the government may subject those awaiting trial to the conditions and restrictions of incarceration so long as those conditions and restrictions do not amount to punishment. *Id.*

"The determination of whether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some other legitimate government purpose." *Meek v. Koonce,* Case No. 14-CV-1335-MSK-KLM, 2015 WL 4944076, at *4 (D. Colo. Aug. 20, 2015) (unpublished).

> If an act by a prison official, such as placing the detainee in segregation, is done with intent to punish, the act constitutes pretrial punishment.  Similarly, if a restriction or condition is not reasonably related to a legitimate governmental goal—that is, it is arbitrary or purposeless—the Court may infer that the purpose of the action is punishment.  On the other hand, restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are uncomfortable.  Ensuring security and order at the institution is a permissible non-punitive objective.  Thus, no process is required if a pretrial detainee is placed in segregation not as punishment, but for managerial reasons.

24

*Id.*

Here, Plaintiff alleges the transfers, loss of privileges and lockdowns were "discipline" and "punishment." *See* Dkt. No. 1 at 42 ("I was disciplined[.]") and 43 ("I was punished again[.]"), 45 ("The county punishes me[.]"). These allegations are likely sufficient to state a claim. Nevertheless, like many of Plaintiff's other claims, he opted to collectively plead this claim against many Defendants. *See Brown*, 662 F. 3d at 1165. For example, Plaintiff alleges, "I received disciplinary punishments by Johnny Dallis, Chris Shrum, Richard Sourjohn, Sawyer Wyse, Tamera Summers, Sylvia Holmes, Dayna Cohen, Thomas Scroggins, Robert Jones and Megan Ford." *Id.* at 42 (cleaned up). He later alleges, "I was again transferred to Adair County Detention Center by Johnny Dallis, Chris Shrum, Richard Sourjohn and Sawyer Wyse." *Id.* He alleges on August 15, 2023, "Johnny Dallis, Chris Shrum, Sawyer Wyse, Dayna Cohen, Thomas Scroggins, Tamera Summers and Richard Sourjohn imposed a lockdown on me." *Id.* at 43 (cleaned up). These allegations do not make clear exactly who is alleged to have done what to Plaintiff. *Robbins*, 519 F.3d at 1250. As a result, these Defendants do not have fair notice of the basis of the claim.

Elsewhere, he does not identify who allegedly punished him. For example, he alleges, "I was transferred to Adair County without a warrant from Adair County out of discipline." *Id.* at 43. He also alleges, "Cherokee County Detention Center had me transferred from Adair County to Sequoyah County on about 6/15/2023 with no reason for disciplinary, no hearing, no written notice and I did not have a warrant out of Sequoyah County." *Id.* (cleaned up). These vague allegations that do not identify any direct action by any Defendant are likewise insufficient to state a claim.

Nevertheless, giving Plaintiff the benefit of liberal construction, the only cognizable claim the Court can glean is that on January 19, 2023, Johnny Dallis transferred Plaintiff to Delaware County as a form of punishment. *See* Dkt. No. 1 at 41. This allegation, taken in context with the

whole of Plaintiff's ninth claim, provides sufficient information to give Defendant Johnny Dallis fair notice of the nature of the claim and the grounds on which it rests. Therefore, Plaintiff's procedural due process claim is sufficient to state a claim against Defendant Johnny Dallis; this claim is dismissed as to all other Defendants.

### J. Surviving Claims

To recap, all of Plaintiff's claims against the Cherokee County Jail Defendants are dismissed except for: (1) Plaintiff's excessive force claim (Claim 2) against Defendants Scroggins and Huff, individually;[7] (2) Plaintiff's failure to protect claim (Claim 5) against Defendants Scroggins and Huff, individually and officially;[8] and (3) Plaintiff's procedural due process claim (Claim 9) against Defendant Johnny Dallis, individually and officially.[9] Accordingly, the Cherokee County Jail Defendants' Motion to Dismiss [Dkt. No. 42] is granted in part and denied in part.

### K. Sufficiency of Service

Having concluded that some of Plaintiff's allegations are sufficient to state a claim, the Court addresses the Cherokee County Jail Defendants' request to dismiss Plaintiff's Complaint for failure to properly serve said Defendants.[10] *See* Dkt. No. 42 at 3-5. Defendants contend the

---

[7] Plaintiff alleged he was "suing all names individuals in their personal capacities[.]" Dkt. No. 1 at 14.

[8] Plaintiff alleged he was suing "all named in their individual capacities for personal involvement and being directly involved in violating my federal protected rights that leads to severe injury and loss. I am suing in official capacities to all named[.]" Dkt. No. 1 at 27 (cleaned up).
[9] Plaintiff alleged he was suing "jail officials named above in their official capacities for violating due process to disciplinary procedures and policy at county jail. I am suing all above named in their personal capacities for personally and directly involved in violating my due process rights[.]" Dkt. No. 1 at 45 (cleaned up).

[10] The Court constrains its analysis to the remaining Defendants: Scroggins, Huff and Johnny Dallis.

26

"Summons and Complaint were simply dropped off at the Cherokee County Detention Center as one large delivery.  None of these Defendants reside at this location.  None of these Defendants authorized the detention center to accept service."  *Id.* at 3.  Therefore, the Defendants argue "Plaintiff has failed to properly serve these Defendants[.]"  *Id.*

Federal Rule of Civil Procedure 12(b)(5) authorizes a court to dismiss a complaint for insufficient service of process.  "When a defendant seeks dismissal of a complaint based on insufficient service of process, the plaintiff bears the burden of proving that service was properly made."  *Dunagan v. Lehnus*, Case No. 20-CV-393-CVE, 2021 WL 1234522, at *2 (N.D. Okla. Apr. 1, 2021) (unpublished) (citing *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008)).  While Rule 12(b)(5) provides the procedure for challenging the sufficiency of service of process, Federal Rule of Civil Procedure 4 provides the methods for service of process.  As relevant here,

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>
> > (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> >
> > (2) doing any of the following:
> >
> > > (A) delivering a copy of the summons and of the complaint to the individual personally;
> > >
> > > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or,
> > >
> > > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  Oklahoma law provides that an individual may be served through personal service, by mail, or, in some circumstances, by publication. Okla. Stat. tit. 12, § 2004.

Here, the USMS[11] chose personal service which, under Oklahoma law, must be made in the same manner provided by Federal Rule of Civil Procedure 4(e)(2). Okla. Stat. tit. 12, § 2004(C)(1)(c)(1). The proofs of service filed by the USMS indicate Defendants Scroggins, Huff and Johnny Dallis were all personally served at 1513 N. Douglas Avenue in Tahlequah, Oklahoma. *See* Dkt. Nos. 27 at 4, 31 at 4 and 33 at 4. The United States Marshal who completed each proof of service declared under penalty of perjury that the information was true. *See id.*

Defendants do not provide any evidence, beyond their unsupported assertions, to the contrary. *See Goff v. Hukill*, No. 08-CV-071-TCK, 2010 WL 2595785, at *2 (N.D. Okla. June 24, 2010) (unpublished) (the Court may consider affidavits and other documentary evidence when adjudicating a Rule 12(b)(5) motion to dismiss). While the Court acknowledges, "[i]n opposing a motion to dismiss for insufficient service of process, plaintiff bears the burden to make a prima facie case that he has satisfied statutory and due process requirements so as to permit the court to exercise personal jurisdiction over defendants," *Fisher,* 531 F.Supp.2d at 1260, here the evidence before the Court is that Plaintiff, via the USMS, complied with Federal Rule of Civil Procedure 4. By failing to attach an affidavit or any other documentary evidence, Defendants have failed to demonstrate the incorrectness of the filed proofs of service. *See* Dkt. Nos. 27, 31 and 33. Based on these circumstances and the information before the Court, the Court cannot conclude Plaintiff failed to effectuate proper service. For these reasons, Defendants' request to dismiss Plaintiff's Complaint and/or quash service of the Complaint is denied.

Defendants Scroggins, Huff and Johnny Dallis shall file their Answers to Plaintiff's Claims 2, 5 and 9 within fourteen (14) days of the date of this Order. Fed. R. Civ. P. 12(a)(4).

---

[11]  The Court notes Plaintiff is proceeding *in forma pauperis* in this matter and service was attempted by the United States Marshal Service ("USMS"). *See* Dkt Nos. 4 and 6; *see also* Fed. R. Civ. P. 4(c)(3).

## CONCLUSION

IT IS THEREFORE ORDERED that the District Attorney Defendants' Motion to Dismiss [Dkt. No. 38] is GRANTED.  Defendants John Bennett and Haley Robison are terminated from this action.

IT IS FURTHER ORDERED that Defendant Rachel Dallis' Motion to Dismiss [Dkt. No. 49] is GRANTED.  Defendant Rachel Dallis is terminated from this action.

IT IS FURTHER ORDERED that Defendant Cherokee County's Motion to Dismiss [Dkt. No. 41] is GRANTED.  Defendant Cherokee County is terminated from this action.

IT IS FURTHER ORDERED that Defendant Cherokee County's Motion to Deem its Motion to Dismiss Confessed [Dkt. No. 58] is DENIED AS MOOT.

IT IS FURTHER ORDERED that the Cherokee County Jail Defendants' Motion to Dismiss [Dkt. No. 42] is GRANTED IN PART AND DENIED IN PART.  Defendants Chris Shrum, Dayna Cohen, Sawyer Wise, Richard Sourjohn, Megan Ford, Tamera Summers, Syliva Holmes and Roberts Jones are terminated from this action.

Dated this 23rd day of February, 2026.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE